DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Melissa Williams, appeals from the decision of the Lorain County Court of Common Pleas, which found her guilty of complicity to commit rape, complicity to commit kidnapping, complicity to commit sexual battery, and sexual battery. We affirm in part, reverse in part, and remand.
 I. {¶ 2} Ms. Williams was indicted on January 19, 2003. The original indictment included five counts of complicity to rape, in violation of R.C. 2923.03(A)(2) and 2907.02(A); one count of rape, in violation of R.C. 2907.02(A)(1)(a) and/or 2907.02(A)(2); one count of kidnapping, in violation of R.C. 2905.01(A)(4); and six counts of sexual battery, in violation of R.C. 2907.03(A)(2). Ms. Williams' case was consolidated with that of Robert Merryman. The case proceeded to trial, and a jury found Ms. Williams guilty of one count of complicity to commit rape, a first degree felony; one count of complicity to commit kidnapping, a first degree felony; three counts of complicity to sexual battery, all third degree felonies; and one count of sexual battery, a third degree felony. Ms. Williams was sentenced to seven years on complicity to commit rape and seven years on complicity to commit kidnapping, to be served concurrently. Ms. Williams was sentenced to three years on each of the remaining counts, to be served concurrently but consecutively to the seven years, for a total of ten years.
 {¶ 3} Ms. Williams timely appealed and asserts three assignments of error. We will combine the second and third assignments of error for ease of review.
 II. Second Assignment of Error
"Appellant's Rights Under Article I, Section 16 Of The Ohio Constitution And The Fourteenth Amendment To The United States Constitution Were Violated And She Was Improperly Denied A CRIM.R. 29 Acquittal When The Convictions Were Not Supported By Sufficient Evidence."
 Third Assignment of Error
"The Verdicts Finding Melissa Williams Guilty Were Against The Manifest Weight Of The Evidence Because There Was No Substantial Evidence Upon Which A Trier Of Fact Could Reasonably Conclude That The Elements Of The Offenses Had Been Proven Beyond A Reasonable Doubt And Thus Were In Violation Of Appellant's Rights As Guaranteed By The Constitutions Of The United States And The State Of Ohio."
 {¶ 4} In her second and third assignments of error, Ms. Williams asserts that her conviction was not supported by a sufficiency of the evidence and was against the manifest weight of the evidence. We disagree.
 {¶ 5} As a preliminary matter, this Court notes that sufficiency of the evidence and weight of the evidence are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 6} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 7} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 8} Sufficiency is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts
(Sept. 17, 1997), 9th Dist. No. 96CA006462. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) Id.
 {¶ 9} Ms. Williams was found guilty of complicity to commit rape, in violation of R.C. 2923.03(A)(2) and 2907.02(A)(2). R.C.2923.03(A) provides, in pertinent part:
"No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"***
"(2) Aid or abet another in committing the offense."
R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 10} The jury also found Ms. Williams guilty of complicity to commit kidnapping, a violation of R.C. 2923.03(A) and 2905.01(A)(4). R.C. 2905.01(A)(4) states, in relevant part:
"No person, by force, threat, or deception, *** shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
"(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against he victim's will[.]"
 {¶ 11} The jury further found Ms. Williams guilty of complicity to commit sexual battery and sexual battery, in violation of R.C. 2923.03(A) and 2907.03(A)(2). R.C. 2907.03(A)(2) states as follows: "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when *** [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." Applying the foregoing to the facts of this case, we now turn to the evidence adduced at trial.
 {¶ 12} The victim testified on behalf of the State as follows: On the night of July 20, 1998, she went out with Ms. Williams and co-defendant Robert Merryman. The three went to a bar named Ozzy's, where the victim consumed seven to ten alcoholic beverages, including both beer and shots. After Ozzy's, the three went to another bar called the Mardi Gras where the victim had another five to six drinks. While at the Mardi Gras, Ms. Williams approached the victim about engaging in a threesome with Ms. Williams and Mr. Merryman. The victim told Ms. Williams "No way; there is no way." When the three left the Mardi Gras, the victim was in and out of consciousness in the car. The victim did not remember anything from the time she got into the car until she woke up and found Mr. Merryman on top of and inside her. When she awoke, the victim tried to push Mr. Merryman off of her and told him repeatedly to stop. When the upper half of her body fell off the bed, Mr. Merryman put her back up on the bed and began to have sex with her again. When Mr. Merryman got off her, she found her clothes and left the motel to find a telephone.
 {¶ 13} Duane Eaton testified on behalf of the State. Mr. Eaton testified that on July 21, 1998, he was on his way to work at 5:30 in the morning when he noticed a "girl walking rather rapidly and constantly looking back behind her, and it just didn't look right." He testified that she looked scared, so he took her to a telephone to call someone to come pick her up.
 {¶ 14} The State called Dr. Allan Starr as a witness. Dr. Starr is staff director of the emergency department at Elyria Memorial Hospital Regional Health Center. Dr. Starr examined the victim upon her arrival at the hospital. Dr. Starr testified that he found no evidence of trauma, based on medical/physical findings. However, Dr. Starr also testified that more often that not there are no signs of trauma when a victim is raped.
 {¶ 15} Brenda Gerardi also testified on behalf of the State. Ms. Gerardi is employed as a forensic scientist in the Serology/DNA section of the Ohio Bureau of Criminal Investigation ("BCI"). Ms. Gerardi used the victim's rape kit submitted by the North Ridgeville Police Department to perform tests to detect the presence of semen. Ms. Gerardi testified that semen was found on the vaginal and rectal smears in the victim's rape kit.
 {¶ 16} The State also called Lynn Bolin as a witness. Ms. Bolin is employed by the BCI as a DNA analyst. Ms. Bolin testified that she found both the victim's and Mr. Merryman's DNA on the rectal and vaginal swabs that were submitted in the victim's rape kit. Ms. Bolin further testified that, in her professional opinion and scientifically, the sperm found on the anal and vaginal swabs belonged to Mr. Merryman.
 {¶ 17} Mr. Merryman testified on his own behalf as follows: He, Ms. Williams and the victim engaged in consensual sex. The victim took her own clothes off and was able to make her own decisions. After having sex with the victim, he fell asleep beside Ms. Williams. Mr. Merryman awoke when he heard the motel room door shut. He woke Ms. Williams and the two of them went to look for the victim because they knew she did not have a ride. Mr. Merryman denied having anal sex with the victim. Upon further questioning, Mr. Merryman stated that the victim did not speak at all during the entire sexual encounter.
 {¶ 18} Ms. Williams also testified on her own behalf as follows: She proposed the idea of a threesome between herself, the victim, and Mr. Merryman, and the victim agreed. The victim was drunk when the three left the Mardi Gras. After arriving at the motel, Ms. Williams testified that she had sex with Mr. Merryman; she performed oral sex on the victim; the victim performed oral sex on Mr. Merryman; Mr. Merryman had sex with the victim and then had sex with Ms. Williams again. After the sexual activity, she went to sleep in the same bed as Mr. Merryman. The victim was sleeping on the other bed in the motel room. Around 5:30 in the morning, Mr. Merryman woke her up and told her that the victim had left. She and Mr. Merryman then went to look for the victim.
 {¶ 19} After careful review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it convicted Ms. Williams of complicity to commit rape, complicity to commit kidnapping, complicity to commit sexual battery, and sexual battery. Although conflicting testimony was presented, we refuse to overturn the verdict because the jury chose to believe other testimony. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." Statev. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. Accordingly, we hold that Ms. Williams' conviction was not against the manifest weight of the evidence.
 {¶ 20} Having already found that Ms. Williams' conviction was not against the manifest weight of the evidence, we conclude that there was sufficient evidence to support the verdict in this case. See Roberts, supra.
 {¶ 21} Ms. Williams' second and third assignments of error are overruled.
 First Assignment of Error
"Appellant's Rights Were Violated When The Trial Court Imposed An Illegal Sentence By Imposing More Than The Minimum and Consecutive Sentences In Violation Of R.C. 2929.14(B) And (E)(3)."
 {¶ 22} In her first assignment of error, Ms. Williams avers that the trial court erred by sentencing her to more than the minimum sentences and to consecutive sentences, in violation of R.C. 2929.14(B) and 2929.14(E). We agree.
 {¶ 23} An appellate court may remand a case for resentencing if it clearly and convincingly finds that the trial court's findings are unsupported by the record or that the sentence imposed by the trial court is otherwise contrary to law. R.C. 2953.08(G). Clear and convincing evidence is evidence "`which will produce *** a firm belief or conviction as to the allegations sought to be established.'" State v. Eppinger
(2001), 91 Ohio St.3d 158, 164, quoting Cross v. Ledford (1954),161 Ohio St. 469, 477.
 {¶ 24} Ms. Williams asserts that the trial court erred in failing to impose the shortest prison terms authorized for the offenses of which she was found guilty. R.C. 2929.14(A) sets forth the basic prison terms for various felony offenses. We analyze Ms. Williams' assertion pursuant to the version of R.C. 2929.14(A) in effect at the time of Ms. Williams' sentencing:
"[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter ***, the court shall impose a definite prison term that shall be one of the following:
"(1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years.
" ***
"(3) For a felony of the third degree, the prison term shall be one, two, three, four, or five years."
 {¶ 25} R.C. 2929.14(B) further requires that:
"[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 26} "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned *** before it can lawfully impose more than the minimum authorized sentence." State v. Edmonson (1999), 86 Ohio St.3d 324, syllabus. However, the Ohio Supreme Court has recently held that "when imposing a nonminimum sentence on a first offender, a trial court is required to make its statutorily sanctioned findings at the sentencing hearing." State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, paragraph two of the syllabus.
 {¶ 27} Rather than imposing the shortest prison terms authorized by R.C. 2929.14(A), the trial court in the present case sentenced Ms. Williams to seven years on each of her first degree felony convictions and three years on each of her third degree felony convictions. In its sentencing entry, the trial court stated, pursuant to R.C. 2929.14(B), that "the shortest prison term will demean the seriousness of the defendant's conduct," however, the trial court did not make the required findings during the sentencing hearing. Consequently, the trial court erred in imposing more than the minimum terms authorized by R.C.2929.14(A).
 {¶ 28} Ms. Williams also argues that the trial court erred by ordering that she serve the seven-year and three-year prison terms consecutively. R.C. 2929.14(E) outlines the conditions under which a trial court may impose consecutive sentences, and provides in pertinent part:
"If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
"(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
"(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." (Emphasis added.) R.C. 2929.14(E)(4).
 {¶ 29} In addition, R.C. 2929.19(B)(2)(c) requires the trial court to give its reasons for imposing consecutive sentences pursuant to R.C.2929.14. When a trial court imposes consecutive sentences pursuant to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), "a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." Comer at paragraph one of the syllabus.
 {¶ 30} The trial court in the present case failed to make the required findings to impose consecutive sentences or provide reasons supporting those findings at the sentencing hearing. Thus, we find that the trial court erred in imposing more than the minimum sentence and in imposing consecutive sentences. Accordingly, Ms. Williams' first assignment of error is sustained.
 III. {¶ 31} Ms. Williams first assignment of error is sustained. The second and third assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and cause remanded for further proceedings consistent with this decision.
Judgment affirmed in part, reversed in part, and cause remanded.
SLABY, P.J.
BAIRD, J. CONCUR